**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

James Helfrich
P.O BOX 921
Pataskala, Ohio 43062                    :

       Plaintiff,            :          Case No.   2 1 9 C V 4 8 2 5

v.

                           :          Judge:

The City of Pataskala                                   Judge Morrison
621 West Broad street                    :
Pataskala, Ohio 43062

Judge David N. Stansbury                 :
307 Timber Lane View Dr.                 :
Newark, Ohio 43055
 In his individual and official capacity

                           :          Magistrate:

The City of Newark, Ohio                            **MAGISTRATE JUDGE DEAVERS**
c/o Douglas Sassen, Law Director          :
40 West Main Street
Newark, Ohio 43055

Tricia Moore                             :
In her individual and official capacity  :
40 West Main Street
Newark, Ohio 43055

                           :

Issac Wiles Burkholder                   :
& Teetor, LLC
Two Miranova Place Suite 700             :
Columbus, Ohio 43215                     :

 Officer Bruce Brooks
In his individual and official capacity  :
621 West Broad Street                    :
Pataskala, Ohio 43062

Officer Mike Boals
In his individual and official capacity
179 Fairground St
Pataskala, Ohio 43062

1

Officer Anthony Wisniewski
In his individual and official capacity
621 West Broad Street
Pataskala, Ohio 43062

Officer Gary Smith
In his individual and official capacity
621 West Broad Street
Pataskala, Ohio 43062

Sergeant Josh McGeorge
In his individual and official capacity
621 West Broad Street
Pataskala, Ohio 43062

Brandon Kaiser
6261 Pambrook Ct
Columbus Ohio 43213

Brittney Johnson
6261 Pambrook Ct
Columbus Ohio 43213

## PLAINTIFF'S COMPLAINT WITH JURY DEMAND

1. **Jurisdiction** This court has jurisdiction involving questions of federal law. As among

   others, the Defendants have a pattern of retaliating against the Plaintiff. In violation of

   Plaintiff (hereinafter Helfrich) constitutional and civil rights.

2. Helfrich holds a considerable amount of real property within Licking County. He has

   expressed his freedom of speech over several years, criticizing the city, the police dept.

   and the judicial system within Licking County, Ohio. Helfrich is very outspoken about

his political beliefs and active in campaign issues opposing waste in our cities and schools.

3. The Defendants have demonstrated a pattern of retaliation summarized below.

4. As well, Licking County Municipal Court and the Defendants conspired to bring criminal theft charge against the Plaintiff, Case No: 18 CRB 0051, retaliated against Plaintiff. Through numerous incidents and facts revealing the Defendants conspired to obtain a false criminal conviction.

5. Among others, the Plaintiff has suffered financially, emotionally, has been defamed, subject to ridicule and persecution.

6. The retaliation and unlawful conduct by said defendants a pattern that violated Helfrich's civil rights, including his First and Fourth Amendment rights and other state and federal statutes.

## PARTIES

7. James Helfrich is a resident of the City of Pataskala, in Licking County, Ohio, and holds title to real property within Licking County, Ohio.

8. Judge David N. Stansbury is a current judge in Licking County Municipal Court, Newark Ohio. Helfrich alleges he has used that position to settle personal vendettas. The Defendant is sued in his official and individual capacity.

9. The City of Pataskala, State of Ohio

10. The City of Newark, Ohio has been retained under contract by the City of Pataskala, Ohio and acted in bad faith to secure and continue its contract with Pataskala by prosecuting certain criminal violations.

11. Tricia Moore is an employee of the City of Newark, Ohio. The Defendant is sued in her official and individual capacity.

12. Issac Wiles Burkholder & Teetor, LLC is under contract with the City of Pataskala as legal counsel, has acted in bad faith to secure and continue its contract with Pataskala, Ohio and filed criminal charges of trespass and theft against Helfrich On January 5th, 2018.

13. Officer Bruce Brooks is the Chief of Police Pataskala Ohio whom Helfrich publicly criticized. The defendant is sued in his official and individual capacity.

14. Officer Mike Boals is the assistant chief of police Pataskala, Ohio and at the time of the incidents, he resided at 159 S. Township Rd where he rented housing from Helfrich for several years. Helfrich on several occasions had to confront Boals on lease violations occurring at Boals residence. Boals was involved in the decision to file trespass charges against Helfrich knowing that Helfrich owned the property where the alleged incident took place and had every legal right to be on said property. Throughout his tenancy at Township Rd. Boals insisted to Helfrich that he was entitled to a police discount. In 2017, Helfrich raised Boals rent. Helfrich is alleging that Boals used his position to settle a score with the Plaintiff. The Defendant is sued in his official and individual capacity.

15. Officer Anthony Wisniewski is the arresting officer from Pataskala, Ohio in several criminal charges filed against Helfrich. The Defendant is sued in his official and induvial capacity.

16. Officer Gary Smith is a detective within the police department of Pataskala, Ohio who sat in the courtroom for the entire two days of criminal trial proceedings against Plaintiff, among others, Plaintiff alleges Smith violated the court's order of separation of witnesses and conspired with others to obtain a false conviction of Helfrich. The Defendant is sued in his official and individual capacity.

17. Sargent Josh McGeorge is the officer who perused the charges against Helfrich on April 3rd, 2018. ORC 2921.31, 2921.13, 2917-32. They were dismissed.

18. Brandon Kaiser was a tenant at 10012 Hollow Rd Pataskala, Ohio.

19. Brittney Johnson is the person who alleged the Plaintiff stole her dog that she claimed was a family member while she was visiting 10012 Hollow Rd. Brittney Johnson filed the police report as claimed above. It now has been shown that she never owned the dog, nor was she visiting 10012 Hollow Rd Pataskala, Ohio as alleged in the criminal complaint she filed.

## HISTORY

20. The City of Pataskala and its employees and agents have demonstrated a pattern of retaliation and animosity towards Helfrich as a result of his outspoken nature and political views. The Plaintiff would agree that one incident on its own may not give rise to this action. The Plaintiff will give a brief summary to demonstrate the pattern and intentional animosity.

21. The Plaintiff owned land at 180 South Vine St. within the City of Pataskala and attempted to develop it for which it was zoned. The City for no justifiable reasons continued to deny him permits. As a result, the Plaintiff had to file three administrative

appeals against the City in Licking County Common Pleas Court. Helfrich prevailed in all three administrative appeals. Every time the Licking County Common Pleas Court ordered the (city to comply with the zoning) the City would simply orchestrate another denial.

22. Subsequent to the three successful administrative appeals, Helfrich filed in Federal District Court a lawsuit against the City for denying him the use of his real property. The city offered a settlement.

23. The ordeal in paragraph 20& 21 caused the Plaintiff to suffer financial losses in an ordeal that lasted 6 years before he was able to build on the property for which it was zoned. The developed homes are now known as 95 and 99 First Ave, Pataskala, Ohio. Two single-family houses.

24. Throughout these years, the City through its agents, singled out the Plaintiff, interfered with his real property and referred to him as a trouble maker for expressing his views on political and levy/bond issues.

25. In 2017, the Defendants escalated their retaliation.

26. On or about January 19th, 2017 the City of Pataskala intentionally misinformed a tenant of Helfrich's property at 1312 Harold Stewart Parkway Pataskala, Ohio claiming that Helfrich refused to allow the City to turn on the water for this tenant's use. Subsequently, that tenant filed a lawsuit against Helfrich under the tenant-landlord housing code, Case No: 17CVG 00237 in the Licking County Municipal Court, Newark, OH. That case was dismissed.

27. In 2017, Helfrich notified the City that he objected to the City allowing persons to negotiate city utility services that he ultimately had to pay for. (The City required the

water and sewer bills to be kept in Helfrich's name and held him liable for them; however, the City allowed anyone to negotiate service orders and payment plans knowing that Helfrich; as owner, was ultimately responsible for them) When the utilities were not paid, the City would charge Helfrich. Helfrich threatened legal action and after several meetings with the City. Helfrich showed up at a City meeting and drew stick pictures so the City, and its council members, and department heads could understand. While the City took offense to Helfrich's latest approach, they were again exercising their abusive treatment of Helfrich. It was a very simple concept, that if Helfrich was responsible for the utilities, Helfrich alone should have had control instead, the city demonstrated their animosity's toward Helfrich and allowed a tenant to avoid responsibility for consuming utilities under Helfrich's control. Therefore, interfering with Helfrich's real property.

28. Agents for the city referred to Helfrich as a trouble maker. Referred to him as a "mother fucker" and "not a decent human being" (Officer Wisenski). City Council member, Tommy Lee referred to Helfrich as trouble for opposing campaign issues, comparing Helfrich to Al Sharpton.

29. On or about April 23, 2017, the Plaintiff filed charges with the Pataskala police department after an individual on social media bragged about destroying his political signs. Within that social media, the person had placed their name and a description of what they had done. During the same period, Helfrich also reported that a trailer he had used for political purposes was damaged, but the police made no arrest.

30. On December 27th, 2017 Helfrich reported to the police that a tenant and he were having problems and that Helfrich had received a threatening phone call, threatening to damage his rental house. No investigation was undertaken by the Pataskala Police dept. Months

later without a shred of evidence, the Pataskala police department charged Helfrich with making such calls and threatening himself.

31. Helfrich during those months continued to criticize the Pataskala police department for their failure to investigate his compliant of receiving said threats. Helfrich had also reported to the police that the property was damaged subsequent to the report in paragraph 30.

32. On December 27th, 2017 Helfrich filed criminal trespass charges against Brandon Kaiser for trespassing on a farm at 10012 Hollow Rd. in Pataskala Ohio. Helfrich had established that he had previously told Kaiser not to come onto the property. Furthermore, there were trespass signs visible. According to one witness, Douglas Smith, who went to the Pataskala police department to verify the trespass of Brandon Kaiser. Smith said that the chief of police said that it was okay for Kaiser to come onto the property because he had seen Helfrich working on it. Helfrich then contacted the chief of police and questioned him about his alleged comments to Douglas Smith, explaining to the chief of police Brooks, that Kaiser came back to threaten Helfrich. The Pataskala police did nothing to investigate or remedy the situation. Instead, they used Helfrich's report of trespass to support a dog theft charge against Helfrich 6 months later.

33. On January 5th, 2018 the City of Pataskala, through their law director filed criminal trespass charges against Helfrich for trespass on property he owns. Both the City of Pataskala and the law director knew that Helfrich owned the property and even after Helfrich tried to site Ohio law to them, they continued to pursue criminal trespass charges, even after a two-day criminal trial, where Helfrich was acquitted. Case No:18CRB0051

34. Helfrich also continued to criticize the Pataskala police department for their failure to investigate a phone harassment charge that Helfrich also reported on December 27th, 2017. Helfrich had reported to the police that the tenant at 10012 Hollow Rd had called his home and threatened to damage the house. Again, the said Defendants did absolutely nothing to investigate this report, despite knowing tensions between Helfrich and the tenant were escalating.

35. It should be noted that the property above is appraised at approximately $800,000. One of the tenants later testified that Kaiser did damage the property that night and later Helfrich was awarded $8,000 in damages. (The tenant does not have a dime to make restitution). Instead of following up like the police department should have.

36. On April 3rd, 2018 the city of Pataskala through its law director and Officer Josh McGeorge filed yet three more criminal complaints against Helfrich under O.R.C. 2917.32(A) (3), 2921.13 and 2921.31 all of which carried a six-month jail time equaling 18 months in jail (Exhibit 1). The City had filed the charges alleging Helfrich used his mobile phone to make threatening phone calls to himself. Helfrich, in goodwill, provided his phone for the police review, a phone that was not capable to call itself as the police alleged. The day before the trial, after Helfrich retained counsel, the charges were dismissed, (exhibit 2).

37. Helfrich had incurred legal retainer fees, an embarrassment to him and his family, stress, aggravation, etc., all because the Defendants chose to retaliate against him. All as a result of the Police dept. Retaliating Against Helfrich as he continued to criticize their lack of investigation.

## THE DEFENDANTS RETALIATED FOR THE NOTICE OF THIS LAWSUIT

38. In addition to the Defendants retaliating by withholding documents that Helfrich had requested to prepare this complaint. (Ohio's Sunshine Law permits any person to ask and receive public records. Helfrich had put the City on notice that the documents were needed for legal action). The Defendants further retaliated and defamed the Plaintiff in his community, subjecting him to hatred, ridicule, and harassment when they informed residents that Helfrich plugged the main storm sewer line within the city.

39. On October 21st, 2019 Helfrich sent the City and the police officers a notice that is common in civil rights actions that he was filing this lawsuit. Helfrich was putting the police on notice so that the police department would not harass and claim they were unaware of its filing. (Exhibit 3A)

40.  Months prior on July 31st, 2019 Helfrich contacted the city about a drainage problem that was flooding one of his homes. It had flooded three times in the previous weeks. Helfrich had discovered the City's main storm sewer line ran directly under the house. The City claimed it did not. After inspection the City confirmed that the main storm sewer ran directly under the house and confirmed they had no easement for it. Helfrich had asked for the city to resolve the issue and during the interim, asked the City to pay for any damage until the storm sewer issue was resolved.

41. On October 22nd, 2019 the City informed Helfrich that they would not reimburse him one dime for future damages and couldn't remedy the situation anytime in the near future. But did tell Helfrich that he could plug the storm sewer upstream, so that is what Helfrich did. Within days it rained and flooded numerous basements upstream. (The storm sewer pipe drains countless homes, apartments, the library, the YMCA and more. Residents

were furious) Helfrich was blanketed with heated phone calls with people telling Helfrich that when they contacted the city about their basements flooding. The City, the very day after Helfrich put them on notice of this lawsuit, the City put the blame on Helfrich for blocking the pipe. Without the City informing those residents that Helfrich had waited 3 months for resolution, that the City was unable to remedy the situation, that Helfrich had only requested the City pay actual damages in the interim and that City had told Helfrich the only remedy he had was to plug the pipe was intended to retaliate for this lawsuit.

42. The City knew that they were defaming Helfrich, subjecting him to embarrassment, hatred, and ridicule. Attached see communications between the city and Helfrich (exhibits 3B).

## CONSPIRACY

43. Helfrich alleges his civil rights have been violated and that the Defendants conspired and acted in concert to obtain a criminal conviction for theft, which resulted in a 6-month jail term. Case No: 18CRB0051 On January 3rd, 2018 the City filed criminal theft charges against Helfrich for stealing a dog owned by Britney Johnson. Johnson claimed that she was visiting one of Helfrich's rental properties, and Helfrich gave her permission to have her dog on the property. She claims that the dog was not a runner and always came when it was called. See the police report attached (exhibit 3C).

44. During the arraignment, Helfrich informed the Court that it would be imperative that a witness named Douglas Smith must be present at the trial. Trying to resolve the issue, Helfrich informed the Court and the State, that Douglas Smith was a tenant at the

11

property and could prove the charges were false and that Douglas Smith active in the
armed services was being deployed.

45. The State responded within days and moved for a continuation claiming that the arresting
officer was scheduled for some sort of training. The State asked for a continuation
knowing Helfrich's key witness couldn't be there. The court told Helfrich he could get a
trial deposition of Smith. Helfrich argued the State could get a deposition of the arresting
officer instead. Helfrich's argument was simple since the State brought the charges and
knew what their arguments were.

46. Until the trial, Helfrich would not know, if anything, that Smith would be able to testify
to. The State and Judge Stansbury were already informed that Douglas Smith's testimony
would have proved that Helfrich didn't steal the dog allegedly owned by Brittany
Johnson, because it was Douglas Smith that obtained the dog months before Johnson
allegedly arrived at Helfrich's property from out of state.

47. Civil rules require that trial depositions to be filed with the Court the day before the trial.
The trial that was continued was rescheduled for April 12th, 2018. Within hours of
Helfrich filing the transcript, the State asked for their second continuation.

48. Prior to the trial, Helfrich provided the testimony transcript of Douglas Smith, a tenant at
the property. Once again, Helfrich embarrassed the Pataskala police department and sent
correspondence to the City Council that Johnson didn't own the dog, that it was a
runaway, and the actual owner of the dog testified that it never came back when it was
called. Helfrich threatened to file legal action to stop the harassment from the City of
Pataskala and its officers.

49. Instead of withdrawing the Complaint, the City conspired with others to fabricate a conviction with false facts, with intentional lies about Helfrich's past to the jury, including Pataskala police officers and the assistant City prosecutor, fabricating false testimony including tampering with evidence.

50. The State never supplemented their discovery responses and intentionally deprived Helfrich to prepare as Helfrich was not being tried for stealing Brittney Johnson's dog, but rather Brandon Kaiser's dog.

51. The Plaintiff represented himself in the criminal proceeding and with an Appeal to the Fifth District Court case no: 18 CA0045. The Appellate Court upheld the criminal conviction ruling that the trial court had latitude in procedural matters and in a 52-page decision did not site one shred of evidence in the record to support that Helfrich stole the dog. But did find that prosecutor Tricia Moore did knowingly lie to mislead the jury as to Helfrich's past. During the trial, Judge Stansbury refused to allow Helfrich to produce rebuttal testimony to impeach Tricia Moore's false statements into the record and then acted on her false statements by telling the jury that the allegations supported Helfrich's motives to steal and that Helfrich had no credibility. (As Helfrich's brief to the Appellate Court which cited to the State's appellate brief, the officer claims that he left the house at 5:25 pm, the dog was found at 5:30 pm and the officer testified that it would take 17 mins to drive the route. It was then impossible to have the jury review with a clear mind. The judge just told the jury that Helfrich had a criminal motive and no such credibility.

52. The conspiracy is further heightened as the appeals court did confirm. The prosecutor, Trisha Moore, intentionally lied to the jury about Helfrich's past. Although Helfrich

continued to object, Judge Stansbury allowed in Moore's lies, informing the jury that it supported Helfrich's credibility and motives to lie. Supreme Court, Case no: 2019-0848 was declined, with Justice French Dissenting attached. (attached is exhibit 4.)

53. Prior to the trial starting (Defendants) Bruce Brooks, Mike Boals and Smith, who were not State witnesses, were in the State's witness room. Helfrich brought it to the Court's attention that given that they were not State witnesses, they had no business in the Prosecution's waiting room. Judge Stansbury agreed and ordered them out. Despite the order, both Brooks and Boals repeatedly entered the Prosecutor's witness room throughout the trial. (Helfrich was unaware of the violation until after the trial).

54. The Defendants intentionally lied to the jury about Helfrich's previous conduct and withheld crucial documents and witness disclosure. As a result, the conspirators never allowed Helfrich to prepare and prevented him from calling witnesses to defend himself.

55. Brittney Johnson reported that theft as her property was listed as a witness by the State. Helfrich now knows the State knowingly produced a fraudulent address, knowing Johnson could not be subpoenaed by Helfrich prior to trial.

56. Post-trial Helfrich also filed a public records request for the video of the courtroom. For two days Sargent Detective Smith, who was not called as a witness, would get up and leave the courtroom and communicate with witnesses.

57. The Defendants further violated Helfrich's civil rights and interfered with the preparation and filing of this legal action. The city of Pataskala had reason to believe that Helfrich had filed a public records request in preparation for a legal proceeding against them. The city through their legal council denied the public records request even though Helfrich reasserted that the court did not deny simply because of impending litigation. Helfrich

had asked for among others, the entire files of all the criminal proceedings and that since those proceedings had come to a conclusion that he was now intitled to the entire file held by the city and the police. Which would now include their investigation work, notes, journals, and ledgers. Again, the defendants retaliated and denied what was available to any citizen.

58. Helfrich is not pursuing claims under the Ohio sunshine law for failure to produce public records request, but he adds it as additional arguments demonstrating retaliation to a section 1981 claim to this Complaint. When they were put on notice that those documents were going to be used in preparing for legal action.

59. Judge Stansbury used his position to retaliate against Helfrich both pre-trial, during the trial, and post-trial. As the appeals court confirmed, the trial court has latitude in how it makes its decisions.

60. In addition to what has been listed throughout this complaint, Judge Stansbury held a hearing and had Helfrich explain what every one of his exhibits would be used for in the trial. When Helfrich asked the same, the meeting was discontinued. During the trial Helfrich produced witnesses that had pictures to impeach testimony, Stansbury didn't allow it in. Helfrich was accused of entering a garage and stealing two dogs. The video produced established that Helfrich never touched the door of the garage or entered the garage. As for sneaking anywhere, it was broad daylight. Helfrich didn't have to sneak anywhere, he owned the property. Ohio's housing codes allow him to be on that property. It should be noted that Judge Stansbury's animosities continued clear through 2019 when he wrote in a public document that Helfrich snuck around the property and entered the garage.

61. Helfrich produced one witness that had a picture on a phone of the dogs chasing Helfrich driving his truck at the same time he was allegedly letting then out of the garage. Stansbury disallowed the iPhone in as evidence that had the date and time of the alleged theft permanently recorded on the phone.

62. The arresting officer claims he followed a single dog track pattern from the garage to Helfrich's truck. Helfrich produced a witness who took pictures with virtually thousands of prints, making it impossible for the officer to track any prints. In summary, Judge Stansbury allowed the prosecutor a window into any possible defense allowing the prosecutor to prepare an argument, failing to supplement discovery, and then proceeded to trial to put Helfrich behind bars. Regardless of guilt or not.

### Judge Stansbury

63. Prior to the theft trial, the Plaintiff and a personal friend of Judge Stansbury' bailiff, (Eric Nicholas who lives in the same community) had heated confrontations that extended to written communications being sent throughout the courthouse, all of which questioned Eric Nicholas's credibility. Please see the notice filed with the court (exhibit 5).

64. In 2017, Plaintiff filed a forcible entry and detainer action against Robert Burkel, a tenant of the Plaintiff where Licking County Municipal Court, Judge Higgins granted the eviction, Case no. 17CVG 00237 and ordered a set-out. (Under Ohio law, evictions are what they refer to as a Summary Proceeding and the only way to challenge them is to post a bond before proceeding to an appeal.) Judge Stansbury retaliated against Plaintiff and interfered with another judge's entry and ordered the set out to be vacated. See Case No: 17CVG00237

65. Within days, Helfrich refiled another forcible entry and detainer action 17 CVG 00610 against Robert Burkel. Again, the eviction was granted by Judge Higgins and a set out ordered. Once again, Judge Stansbury violated Ohio's law and retaliated against Plaintiff. Once again, he ordered that the set out be denied, by doing so on both incidences, Stansbury was interfering with Helfrich's right to hold and defend his real property, as guaranteed by the United States Constitution.

66. The Plaintiff again turned to his freedom of speech to resolve the issue as it would have taken more than a year to get an Appellate ruling while the tenant overstayed his lease. Again, as Helfrich did with his personal friend, Eric Nicholas he turned to writing articles about Judge Stansbury and circulating them through the Courthouse. Only then was the tenant Burkel ordered out of the property by Judge Stansbury.

67. Judge Stansbury, in a case captioned, <u>Helfrich vs Arron Martin Case No.18 CV 0547,</u> dismissed the action claiming that Plaintiff failed to file a document with the Complaint. Judge Stansbury wrote that since Helfrich expects attorneys and judges not to make a mistake, he was not going to allow Helfrich to make one (exhibit 6).

68. Helfrich responded to the Judge that everyone makes mistakes, but as in the Burkel incidents, Judge Stansbury refused to listen to reason and law and sided with opposing Council, who wanted his client to stay in the property without bond for months pending a motion to reconsider. Helfrich, in a motion to reconsider, also informed the Court that Defendants Counsel's comments were like that of a junior high school tit for tat and had no place within our judicial system (Exhibit 7).

69. Helfrich refiled his Complaint, this time with Judge Higgins presiding, who found in favor or Helfrich Case No: 18CVF2898, Judgement awarded on January 8th, 2019.

70. Judge Stansbury's actions prior to, during, and after the trial was that of hatred and conspiracy to settle a score against Helfrich, who had time and time again embarrassed him for his own mistakes.

71. Post-trial, Helfrich now has obtained evidence that the Defendants conspired to obtain a criminal conviction while knowing at that time, that Helfrich did not commit the theft he was accused of taking

72. Post-trial, Helfrich filed public records request with the Municipal Court for the following: the jury verdict forms and a copy of the States exhibits on a CD (exhibit 8). Helfrich was contacted and informed that the judge interfered with that request and was informed to put the request in a form of a motion to the court. The record was also saturated with Helfrich's arguments that the court and the bailiff had tortured history with Helfrich. Helfrich did file a motion informing Judge Stansbury that he wanted to contact the jury as to what have may or not have been said behind closed doors off record with the Jury (exhibit 9). Bailiff, Eric Nicholas who the jury in and out of the room, serving water, lunch, etc. Allowing both Nicholas and Stansbury time and opportunity to make a derogatory statement.

73. In spite of the history and what was public records request open to any person for the asking, the Judge denied Helfrich's reasonable request, which was guaranteed under Ohio's Sunshine Laws. The denial of the request direct evidence of a conspiracy to deny Helfrich the right to investigate reasonable suspicions (exhibit 10)

74. Helfrich also filed a public records request for the State's exhibit which was a CD relied upon throughout the trial. The State's only evidence was a CD of the tenant videotaping Helfrich on the property. Judge Stansbury held a hearing and allowed the prosecutor to

decide if Helfrich could have either one. Judge Stansbury denied allowing Helfrich to obtain a copy of the CD. (Helfrich first had agreed to pay for copy costs).

75. Helfrich contacted the Appellate court on the issue of Judge Stansbury denying his public records requests. The Appellate court advised Helfrich to file a Mandamus action.

76. Only after Helfrich filed with the Appeals Court, did Judge Stansbury allow the States only evidence, a CD, to be produced. The jury verdict has yet to be produced, as Judge Stansbury only produced it after he redacted all the names.

77. Since the trial, Helfrich now has evidence that the State's CD had been tampered with.

78. Subsequent to the acquittal of trespass, Judge Stansbury in a public entry case no 18CRB00051 continued to claim, that Helfrich did trespass. In that entry, he wrote that Helfrich snuck into a garage. There was no evidence that Helfrich ever snuck anywhere nor was there evidence that Helfrich entered a building or garage of any kind.

79. Judge Stansbury's comment further heightened Helfrich's argument that he and others within Judge Stansbury's Court influenced the jury off record.

80. During the sentencing, Judge Stansbury supported a 6-month jail term for a first-time offender of 60 years old representing himself because of the temperature and where the dog was dropped off at. This statement is what the appeals court used to affirm the sentencing; however, those statements from Stansbury were not in the record. They were only statements that Stansbury made weeks later during the sentencing.

81. In addition to the fine and the sentence of 6 months in jail for a first-time offender, Judge Stansbury also filed a protective order so that Helfrich could not contact Brittney Johnson, who claimed I stole her dog and then violated the subpoena to show up to trial. Brandon Kaiser who testified during the trial that he was never afraid of Helfrich and

Douglas Smith who always testified on Helfrich's behalf and volunteered for the trial deposition by agreement.

82. Douglas Smith, in fact, contacted the court by affidavit on no less than three occasions, informing Judge Stansbury that the order was violating his personal rights to interact with Helfrich and never requested such protective order. Please see a copy of the affidavit that has been filed with Judge Stansbury on no less than three occasions (exhibit 11).

## **CAUSE OF ACTION**

Plaintiff brings the above claims alleging:

83. Abuse of process

84. Fourth Amendment violations

85. Equal protection claims

86. Claims under Title 42 U.S.C 1983 actions and U.S.C. 1985

87. Due process violations

88. Conspiracy to violate civil rights

89. First Amendment retaliation claims

90. Violation of Fourteenth Amendment rights

91. Intimidation and retaliation claims

92. False arrest

93. Arrest with no probable cause

94. Retaliatory Prosecution

95. Ohio's and U.S constitutional rights

96. Malicious prosecution

97. Defamation

## CLAIMS FOR RELIVE

**WHEREFORE,** Plaintiff prays that the court enters an order:

a. **That Plaintiff recover full damages in an amount in excess of $25,000;**

b. **For reasonable and/or statutory attorney's fees; (if Helfrich obtains legal counsel or advice)**

c. **Punitive damages in excess of $2,000,000;**

d. **For cost expended herein;**

e. **For prejudgment and post-judgment interest; and**

f. **For any further relief, at law or in equity,95 this court deems appropriate.**

### JURY DEMAND HEREIN IS REQUESTED TO HEAR ALL CLAIMS

Respectfully submitted,

James Helfrich
P.O. Box 921
Pataskala, Ohio 43062
Phone 740-927-7260
No fax
*Plaintiff pro se*

Helfrich will serve, pursuant to Federal rules.